vs. BIOSAFE Mr. Allen, when you're ready. Good morning and may it please the court, my name is Kevin Allen and I represent the appellant, Matthews International Corporation. The district court here concluded that there was not a case or controversy sufficient to vest the district court with jurisdiction. That decision was erroneous and Matthews requests respectfully that this court reverse. This case involves express allegations of infringement. This case involves an immediate and real controversy of a substantial nature between parties with an adverse legal interest. Not only does the district court's decision conflict with certain decisions from this court, it conflicts with leading precedent and very recent decisions on the subject of declaratory relief. For instance, just a few months ago in 3M vs. Avery, this court held that if a party had actually been charged with infringement, there is necessarily a case or controversy. That holding from 3M echoes the same holding from this court in what may be the leading decision on declaratory judgment jurisdiction, the Arrowhead case. So if you have express allegations of infringement, this court has said no further inquiry is necessary. Here, there are express allegations of infringement and not only that, it's by high-ranking officials. The record clearly reflects that the then president of BioSafe called the North American division president for Matthews after Matthews announced that it would be selling these products at issue. And BioSafe's then president said, hey, Matthews, your product and the process that it employs will violate our patents. You're talking about the December 31, 08 call? Yes, sir. And then later at a trade show, the president of the cremation division of Matthews is at a trade show as is the then president of BioSafe. And again, that gentleman from BioSafe approaches Matthews' president and says, again, BioCremation, Matthews' product infringes our patent. Those accusations are not just made directly to senior officials from senior officials. BioSafe made these accusations to potential customers. Most importantly or most illustratively, BioSafe made these accusations to perhaps the company that could be the largest purchaser of Matthews' equipment, Stewart Enterprises, is a nationwide owner of funeral homes. Funeral homes are the buyers of these products. Matthews doesn't operate any equipment, right? That's correct, Your Honor. It distributes equipment that's made in Scotland, right? It is the licensee from the Scottish company Resumation, and yes, it sells it in the United States, in North America, and the eventual users, correct, Your Honor, are these funeral homes. All the patents here have kind of specific parameters within which the method must be operated. Now, how could they sue you for infringement at all if you're not operating it? Because if you're not operating it, they don't know if you're operating it within the parameters, and they have to know the parameters to accuse you of infringement. They could sue us, Your Honor, under multiple theories. They could sue us for inducing infringement. If you are instructing someone to infringe the patent by practicing within the parameters, do you do that? Well, we don't because we don't think we're violating that the patent will violate it. But the point is, you can't be sued for inducement, which is harder to prove than regular infringement because you have to prove intent. So you throw out inducement, which is more difficult, but you have the same basic facts that you don't operate, and nor do you instruct anyone to operate within the parameters of the claimed invention. Well, Your Honor, we do instruct the users, the funeral homes, on how to operate the equipment. I said we don't instruct them to operate it within the parameters of the patent because if we instructed them to operate it within the parameters of the patent, we would be instructing them to infringe. We are a declaratory... To be inducing, yes, so that you don't. So once again, there's no basis for them to sue you, right? And there's no basis for you to sue for declaratory judgment. Well, I disagree, Your Honor. We are indeed seeking a declaration of non-infringement. And indeed, by the nature of that, we are saying you can operate these outside the parameters of the patent. What BioSafe is saying, they are pointing to certain parameters, specifically the temperature, the pH level, and the pressure. And they're saying, well, the funeral homes could dial it down a bit. And they're saying, well, we don't know how they'll actually operate. This is exactly, I submit, the case that, and the argument that was presented in the Arrowhead case, where the Arrowhead declaratory defendant said, we're not exactly sure how this is going to operate, so really, it hasn't ripened sufficiently. And in that leading case, this court said, that argument does not come with good grace. Because you say you don't know how it will operate, but you knew enough to accuse the declaratory plaintiff of infringement. And in that regard, Your Honor, I respectfully direct the court to BioSafe's counsel's February 2nd, 2009 letter, which went to Matthew's general counsel. And I ask the court- Where's that in the appendix? It begins, I'm sorry, it begins on page 475 of the appendix. And in one of the opening paragraphs of that letter, BioSafe's counsel says, we have a bunch of patent and pending patent applications. For instance, the 580 patent, which talks about, the letter says this, an alkaline hydrolysis process that sets the temperature within a specified range, has a specified pH level, and takes place in a pressurized vessel. That's what BioSafe says about its patent. Later in that same letter, discussing the process that Matthew's equipment will operate, it says in that letter, hey, your process also has a pressurized vessel. Your process will be at a certain temperature, same as ours. Your process will have a pH level, same as ours. That process is within our rights. So you better not use it. So their argument said, hey, we don't know what you are going to do, what these temperatures will be set at. You knew enough to make the accusation. You knew enough to tell our customers not to buy it. So it, too, does not come with good grace. And in the Arrowhead case, the court there said- Is Arrowhead a pre- or post-metamune case? It is a pre-metamune case, with even a stricter standard for granting declaratory relief. So our case would satisfy the stricter pre-metamune standard, let alone the more lenient post-metamune standard. Another illustrative case to the question that Your Honor properly raised, since no one's operated it yet. How could we have- They haven't sued anyone for direct infringement, so you couldn't induce, right? The Cat Tech case, from recent- Cat Tech involved, to the extent that they were arguing about declaratory relief, Cat Tech involved three configurations of a product that would employ a process that arguably would infringe. It hadn't been commercially deployed. And the declaratory defendant said, there cannot be, in that instance, absent commercial deployment, case or controversy, for declaratory relief. The district court said that wasn't correct, and this court affirmed, and said, yes, there can be. This issue is properly joined, even though there had been no commercial deployment of those three configurations in Cat Tech. Just like here, whereby- In Cat Tech, each of the potential methods were infringing. Here, there's nothing in the record to say that there's anyone operating within the parameters of the claimed invention, right? We don't have any evidence that anyone is directly infringing the patent, yet. Well, the same holds true for the three configurations in Cat Tech. They hadn't been used. In Cat Tech, it involved putting catalysts into tools. And if they hadn't been used, the eventual users- But as soon as they're used, they will infringe. And that may or may not be the case in your situation, right? I don't think that was the case in Cat Tech, either. I think after the district court assumed a declaratory jurisdiction, that court said that there's no infringement. It granted the declaratory plaintiff relief. So just as in here, obviously, we are seeking a declaration of non-infringement. It cannot be imposed on us to prove that there would be infringement if it were actually used. In the Arrowhead case, again, that passage talking about good grace, it said it has to be substantially similar. It has to be in the ballpark. It has to be arguable, perhaps, for there to be declaratory jurisdiction. We're seeking a declaration of non-infringement. Obviously, we're not going to say, if this is deployed, it will infringe. We're saying, if it's deployed, it's not going to infringe. They are the ones who have joined the issue by going into the marketplace and telling others that this is going to cause an infringement. If you take this to its academic conclusion, parties in a similar circumstance, we're making it, you have a party selling a product that will deploy a process. It's ready to go to market. It's deployed. It's out there. But no one has yet used it, but we're ready and willing to sell. A party in BioSafe's position takes out advertisements in the Wall Street Journal, the New York Times, and USA Today and says, you better not buy that product because if you use it, it'll infringe. That's wrong. We don't think it will infringe, but they put that out there. They suppress all demand. And no one ever buys it and no one ever deploys it. Then a party in Matthew's position would not be able to bring declaratory relief because no one would ever have used it. I think the illustrating the problem, a problem, with the district court's decision is a side-by-side comparison of the state law claims versus the disposition of the federal claims. On the state law side, the court accepts that they made accusations of infringement and says, okay, they made it. They told your customers it was infringing. It was objectively reasonable for them to do so. But no bad faith. So, no bad faith. So, it's objectively reasonable. They are licensed to say this to you on the state law claims. But now, side-by-side with the federal claims, the court says, we don't really know what will happen down the line. So, you can't come in and challenge what they are licensed to say. This is a gaping hole, I submit, in declaratory judgment jurisdiction. I want to save the rebuttal time, Mr. Allen. I do, Your Honor. Thank you. Thank you, Mr. Barabasco. Yes. May it please the court, Spiro Barabasco, on behalf of BioSafe and Digester. The biggest problem they have in this case is that the court made a finding of fact. The district court did. At page A11 of the opinion, the court says, because the court finds that Matthews has not taken such steps as discussed below, and then proceeds in the succeeding pages, and I would particularly point to page A13 where the court says, here, unlike CATTEC, the parameters used in the operation of Matthews' devices are not settled. That's a finding of fact by the district court, that they have no showing that that's clearly erroneous. And that was supported by the evidence. Bottom line problem here is, when I've read the cases, one of the hallmarks, it seems more to this day, is that patent litigation is a claim chart. You know, you take the claims of the patent, you look at the accused device or method, what have you, and you try to work it out. A lot of these cases, claim charts actually get exchanged. In this case, we couldn't do a claim chart. The district court couldn't do a claim chart. Nobody can do a claim chart. We're not asking them to admit infringement. Of course, they're not going to admit that. But at least, as in CATTEC, show the court what it is you're going to be doing. In CATTEC, they provided the AutoCAD drawings of the parts. They said, here's exactly what we're going to do, court. And we don't think it infringes. When they filed their original complaint, we hit it with a motion to dismiss immediately and said, this case is not right. Essentially, same arguments. Instead of replying, they filed their amended complaint. So they knew where we were coming from. We were saying, this case isn't ready yet. And so if they really thought the case was ready, they could have come forward and said, here's all the information you need. Here's a claim chart. We say for element A, we don't infringe because we're going to do it this way. If they do that, maybe we look at it and we say, we'll give you a covenant not to sue if that's what you plan on doing. But we don't know what they're going to do. And they leave this as a mystery, this entire process. Now, at the heart of this, though, is allegations, at least, that you're in the marketplace suppressing their demand for their product. Is that sufficient to give rise to a case for controversy? I don't think so, Your Honor, because the cases here talk about legal joining of the issues. The controversy being... So as long as you don't issue a claim chart, you can write those advertisements in USA Today saying don't buy those Matthews products because they will infringe. Let's be clear on this. This is an important point. In their initial complaint, they said, we've accused everybody of infringement. By the way, there was nothing in USA Today. Just make that clear. Nothing in the record. But they said, well, you accused us of infringement. And you accused the customers of infringement. We came back and said, under Twombly-Iqbal, for example, on the allegations that we had done something wrong in the marketplace, we said, well, what were the specific statements made? You can't just... Because the specific statements matter here. I think what was... And I think the court even found, if you read in the court's section on the Twombly-Iqbal and state law issues, is we were informing people that we had a patent. And if you operate the Matthews equipment in a certain way, you need to take our patents into consideration. We don't know how they're going to operate it. I think if you took out... We weren't saying don't buy the Matthews equipment. We're simply saying, if you buy the oven, we've got the recipe for the apple pie. Make cherry pies all you want. Just don't make our apple pie. And I think that's a difference in character from what we're talking about. What we don't know is, are they planning to make apple pies or cherry pies? And that's what they should have put forward. If they said, listen, our customers are only going to make cherry pies, it's okay. There's no issue here. How can a patentee provide the notice function in a real-world sense if you can't say to them, and take that into account? Because I notice you're buying an oven. You could maybe think about making apple pies. If you're thinking about making apple pies, take a look at our patent. If you're going to make cherry pies, that's fine. The real point of this case is the word immediacy in the metamune cases, which is what I think the district court came down. It said, look, you haven't settled in on whether you're going to make apple or cherry pies. Okay? The district court apparently, and why I say the character of what we said matters is because if you look at metamune, the totality of the circumstances, when you come in with a 118-page claim chart like some of the other cases have, obviously the battle is much more closely joined. Here in the totality of the circumstances, the fact that we've told some people, hey, make sure when you use this equipment you don't use it according to our patents, that I think lowers the issue from that side. On the immediacy side, what the district court said was, you're nine months from installing a machine. You haven't showed me settled parameters. Why don't we wait for this case? Why don't you install a machine? If you still think you have an issue then, bring your case down. And so I think when you look at a metamune and the totality of the circumstances, and looking at the quality of the statements we were making, they're not very high quality states. Even if you look at the letter at A-475, it doesn't really say we're accusing you of infringement. All it really says is, on page A-478, patent infringement. If it is determined that a new installation by resumation is operated in a manner covered by any of the biosafes patents, is what we say. We don't say, we know you're infringing. And in fact, in their response letter, which is at... I'm getting through all these exhibits here. They basically said that, we don't even see if you're accusing us of infringement. And that's in the record. I don't have the site handy, but it's in Mr. Mervis' declaration. Which is at A-199. He attached their response letter, which is... Oh, here it is. It's March 16th of 2009. They have a false advertising section, they have a copyright infringement section, but on the patent issue, they say... A-224? Yes. While your letter makes vague general references to certain patent claims and process parameters, your allegations are so vague and incomplete that we are, frankly, at a loss to respond. So the quality of the allegations of infringement here should be taken into account with the totality of the circumstances. These are not the type of allegations of infringement that I think you have to jump up to. These were not full-page ads in USA Today. I think if we were taking full-page ads in USA Today, that might heighten that side of it. But we didn't do that. In letters like this that kind of glance off the issue, I think of the totality of some circumstances, when combined with the fact that the district court finds that their parameters aren't settled, and that's a finding of fact that's not clearly erroneous, I say... Motivates for affirmance of the district court's decision. If there are no more questions, I'll save the rest of my time. Thank you, Mr. Barabascos. Thank you. Mr. Allen? Mr. Barabascos talked about the February 2, 2009 letter and said, well, look, we didn't really say patent infringement in so many words, and we didn't send a claims chart. This court has heard similar arguments multiple times. And again, in Arrowhead, more recently in Aris, and in HP Acceleron, this court has said, look, we know lawyers can be crafty. In fact, the court has said, no competent counsel may send a claims chart in this circumstance. But if the issue is joined, if someone suggests that there's patent infringement, that is enough to create a case of controversy. And on the USA Today advertising, yes, of course, they haven't done that. But I'll tell you, going to Stewart Enterprises, calling them for a meeting to Indiana, to because they infringe our patents, that has close to the same effect on us. That's the largest buyer. So you can't, I submit, BioSafe can't be immunized from going to the marketplace, suppressing the demand for our product, and saying, well, no one's used it yet. Thank you. Thank you, Mr. Allen. That concludes our meeting. All rise. The honorable court is adjourned until tomorrow morning. It's 10 o'clock a.m.